**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA  92103
Tel: (619) 696-9006
Fax: (619) 564-6665
***Attorneys for Plaintiff and the Proposed Classes***

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULA MAIETTA, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> RE-BODY, LLC, a Delaware limited liability company, <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Paula Maietta ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her undersigned counsel, hereby sues Defendant Re-Body, LLC ("Defendant") and, upon information and belief and investigation of counsel, alleges as follows:

## I.    INTRODUCTION

1.    Defendant Re-Body, LLC markets "Safslim" (the "Product"), a dietary supplement that Defendant falsely claims is an effective aid in "belly fat" reduction, despite the fact that the Product's "clinically studied ingredient," high-linoleic safflower oil ("HLA" or "safflower oil") does not provide such benefits.

2.    Plaintiff read and relied upon Defendant's claims when purchasing the Product and was damaged as a result.

3.    Plaintiff brings this action challenging Defendant's misleading belly-fat reduction claims relating to the Product on behalf of herself and all other similarly situated consumers in the United States, alleging violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"), and False Advertising Law §§ 17500 *et seq*. ("FAL"). Plaintiff further alleges that Defendant breached express and implied warranties under state law.

4.    Plaintiff seeks an order compelling Defendant to (a) cease marketing the Product using the misleading and unlawful tactics complained of herein, (b) destroy all misleading, deceptive, and unlawful materials, (c) conduct a corrective advertising campaign, (d) restore the amounts by which it has been unjustly enriched, and (e) pay restitution damages and punitive damages, as allowed by law.

## II.    JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(l)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of

CLASS ACTION COMPLAINT

1   $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

2   6.   The Court has personal jurisdiction over Defendant because the Product

3   is advertised, marketed, distributed and sold throughout the State of California;

4   Defendant engaged in the wrongdoing alleged in this Complaint throughout the

5   United States, including in the State of California; and Defendant has sufficient

6   minimum contacts with the State of California, rendering the exercise of jurisdiction

7   by the Court permissible under traditional notions of fair play and substantial justice.

8   7.   Venue is proper in the United States District Court for the Central

9   District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of

10  the events giving rise to the claims occurred within this judicial district, Defendant

11  has marketed and sold the Product, which is at issue in this action, in this judicial

12  district, and it conducts business within this judicial district.

13  ### III.   **PARTIES**

14  8.   Plaintiff is informed and believes, and upon such information and belief

15  alleges, that Defendant is a Delaware limited liability company with its principal

16  place of business located in Boca Raton, Florida.  Plaintiff is informed and believes,

17  and upon such information and belief alleges, that Defendant, at all times relevant,

18  conducted business in the State of California and within the Central District of

19  California. Defendant develops, manufactures, promotes, markets, distributes,

20  and/or sells the Product across the United States, including to consumers in

21  California.

22  9.   Plaintiff Paula Maietta is a citizen of the State of California and resides

23  in La Quinta, California.  Plaintiff most recently purchased the 16 fl. oz. container

24  of the Product in its "key lime cream fusion" flavor for personal and household use

25  and not for resale at a GNC store located at 78-670 Hwy 111 La Quinta, CA 92253

26  in or around 2018. Plaintiff paid approximately $30 for the Product that she

27  purchased. Plaintiff Maietta saw the misrepresentations made on the Product label

28  prior to and at the time of purchase and understood them as representations and

warranties that the Product was safe and effective for belly fat reduction and weight loss as advertised. Ms. Maietta relied on the representations made on the Product's label in deciding to purchase the Product. These representations and warranties were part of her basis of the bargain, in that she would not have purchased the Product had she known the representations were false. Plaintiff Maietta would consider purchasing the Product again if the advertising statements made on the Product labels were, in fact, truthful and represented in a manner as not to deceive consumers.

## IV.    FACTUAL ALLEGATIONS

10.    Obesity is on the rise in the U.S. as nearly 40% of adults in America suffer from obesity today.[1]

11.    Unsurprisingly, the market has responded to this epidemic by creating a $72 billion industry that offers a nearly endless list of products and services that claim to help Americans lose weight.[2]

12.    As Americans desperately search for ways to manage their weight, many are deceived by products that claim, but fail to deliver, effective weight loss solutions.

**A. Defendant's Sale and Marketing of the Product**

13.    Defendant Re-Body, LLC markets SafSlim™ Belly Fat Transformation (the "Product") as a supplement that targets and reduces belly fat.

14.    The Product is sold online and at popular supplement retailers like GNC and sells at a retail price of approximately $25.00 to $30.00.

15.    Defendant markets and advertises the Product as an effective weight-loss supplement through claims placed directly on the Product's bottle despite that it provides no such benefits.

16.    For purposes of this section, each statement that appears in quotation marks (" ") below create affirmative representations about the Product and also

---

[1] https://www.cdc.gov/nchs/data/databriefs/db288.pdf (last visted on April 3, 2020)
[2] https://www.businesswire.com/news/home/20190225005455/en/72-Billion-Weight-Loss-Diet-Control-Market (last visited on April 3, 2020).

-3-

create express and implied warranties that were relied on by Plaintiff and the Class members in deciding to purchase the Product.

17.    These statements will from now on be referred to in this Complaint as the "Express Warranties" and they also form the basis of Plaintiff's consumer fraud causes of action.

18.    Below are true and correct copies of the Product's front and side labels:



CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




CLASS ACTION COMPLAINT



19.    The Product's front label states that it is "THE ORIGINAL BELLY FAT SUPPLEMENT with patented SAFActive78 emulsification technology."

20.    The front label also claims that the "[c]linically studied ingredient HLA helps reduce belly fat."

21.    Following this sentence, the Product label claims to contain "Expeller-pressed high-linoleic safflower oil" and a "Clinical strength formula".

22.    The Product's front-label further claims that the Product is "Non-GMO & Gluten Free".

23.    The left-side label of the Product states "Safslim is a scientifically formulated supplement that helps reduce belly fat. Its main ingredient is high-

linoleic safflower oil (HLA)."

24.    Following this sentence, Defendant states, "A major university study conducted on overweight, post-menopausal women who had high blood sugar showed they had an average reduction of 6.3% belly fat and an average of 20.3% increase in adiponectin."

25.    Defendant then labels the Product with the following sentence, "To achieve weight loss, this product must be taken as part of a reduced-calorie diet and exercise program."

26.    The above-quoted statements are false, misleading, deceptive, and unlawful for the reasons explained herein. Moreover, the above-quoted statements create express or implied warranties and Defendant has breached said warranties for the reasons described herein.

27.    The claims on the packaging of the Product convey the concrete overall message that the Product, by means of its safflower oil, can effectively help consumers lose weight. Defendant intended consumers to rely upon this message, which is false, misleading, deceptive, and unlawful because the Product's "clinically studied ingredient," safflower oil, does not provide belly-fat reduction or weight loss benefits.

**B. Scientific Evidence Shows that the Product Is Ineffective**

28.    Safflower oil is rich in omega-6 fats and devoid of omega-3 fats.

29.    While Defendant promotes safflower oil as a way to help reduce belly fat and achieve weight loss, vegetable oils rich in omega-6s are already consumed in excess in the Western diet, with little benefit for Americans' waistline.

30.    The typical Western diet is estimated to contain as much as 20 times more omega-6s than omega-3s due to high amounts of refined vegetable oils and processed foods. *See* Simopoulos, Artemis P. "An Increase in the Omega-6/Omega-3 Fatty Acid Ratio Increases the Risk for Obesity." *Nutrients* vol. 8,3 128. 2 Mar. 2016, doi:10.3390/nu8030128 ("*Simopoulos* paper").

31.    The *Simopoulos* paper focused on the differential aspects of omega-6 and omega-3 fatty acids and their ratio, in energy balance and in the prevention and management of obesity.

32.    The authors of *Simopoulos* found that a "high omega-6 fatty acid intake and a high omega-6/omega-3 ratio are associated with weight gain in both animal and human studies…"

33.    The *Simopoulus* authors concluded, "[a] lower omega-6/omega-3 ratio should be considered in the management of obesity" and "[b]ecause a high omega-6/omega-3 ratio is associated with overweight/obesity, whereas a balanced ratio decreases obesity and weight gain, it is essential that every effort is made to decrease the omega-6 fatty acids in the diet, while increasing the omega-3 fatty acid intake. This can be accomplished by (1) changing dietary vegetable oils high in omega-6 fatty acids (corn oil, sunflower, safflower, cottonseed, and soybean oils) to oils high in omega-3s (flax, perilla, chia, rapeseed)…"

34.    One paper published in the *Journal of Endocrinology & Diabetes and Obesity* found that consuming more omega-6-rich oils, like safflower oil, actually *increases* obesity risk. *See* Muhlhausler, Beverly; Ailhaud, Gerard, "Omega-6 polyunsaturated fatty acids and the early origins of obesity," *Current Opinion in Endocrinology & Diabetes and Obesity*, February 2013, doi: 10.1097/MED.0b013e32835c1ba7.

35.    Numerous, randomized scientific studies also demonstrate that safflower oil, or HLA, does not provide weight loss or belly fat reduction benefits in humans.

36.    A 2007 study published in the *European Journal of Nutrition* examined the effect in humans of an increased intake of safflower oil and flaxseed oil. *See* Paschos, G.K., Zampelas, A., Panagiotakos, D.B. *et al.* Effects of flaxseed oil supplementation on plasma adiponectin levels in dyslipidemic men. *Eur J Nutr* 46, 315–320 (2007). https://doi.org/10.1007/s00394-007-0668-5 ("*Paschos*

-8-

study").

37.    In the *Paschos* study, 15 mL of safflower oil were given to study participants daily for 12 weeks. Study participants were asked to maintain their usual lifestyle and were instructed to avoid intake of anti-inflammatory drugs, vitamins or other dietary supplements throughout the intervention period.

38.    The results of the *Paschos* study showed "No changes in body mass index ["BMI"] and that "Plasma levels of adiponectin did not change…"

39.    A 2010 study published in the *Journal of the International Society of Sports Nutrition* examined the effect of safflower oil and fish oil in healthy Americans. *See* Noreen, E.E., Sass, M.J., Crowe, M.L. *et al.* Effects of supplemental fish oil on resting metabolic rate, body composition, and salivary cortisol in healthy adults. *J Int Soc Sports Nutr* **7,** 31 (2010). https://doi.org/10.1186/1550-2783-7-31 ("*Noreen* study").

40.    In *Noreen*, study participants were given 4 grams of safflower oil per day for 6 weeks. Study participants, who were healthy and active, were asked to maintain their current diet and exercise practices throughout the study.

41.    Similar to *Paschos*, the *Noreen* study "observed no significant differences for body mass."

42.    The "clinical study" that Defendant relies upon does not support the weight loss claims made on the Product's label. *See* Leigh E Norris, Angela L Collene, Michelle L Asp, Jason C Hsu, Li-Fen Liu, Julia R Richardson, Dongmei Li, Doris Bell, Kwame Osei, Rebecca D Jackson, Martha A Belury, Comparison of dietary conjugated linoleic acid with safflower oil on body composition in obese postmenopausal women with type 2 diabetes mellitus, *The American Journal of Clinical Nutrition*, Volume 90, Issue 3, September 2009, Pages 468–476, https://doi.org/10.3945/ajcn.2008.27371 ("*Norris* study")

43.    The *Norris* study reviewed the effects of safflower oil on postmenopausal women with type 2 diabetes mellitus.

CLASS ACTION COMPLAINT

44.     Study participants received 8 grams of safflower oil for 16 weeks. The safflower oil capsules consisted of approximately 1.56 grams of linoleic acid, 0.24 grams of oleic acid, 0.12 grams of palmitic acid, and 0.04 grams of stearic acid.

45.     For the subjects that remained in the *Norris* study, there were no changes in reported dietary intake or energy expenditure for the sixteen-week duration.

46.     While the authors of the *Norris* study observed a decrease in trunk[3] fat following safflower oil supplementation, the study participants had no change in BMI or total fat tissue.

47.     This suggests that consuming safflower oil caused belly fat to be deposited in other areas of the body.

48.     The *Norris* study results also indicated no significant changes in waist circumference or waist-hip ratio on study participants.

49.     All in all, the *Norris* study does not support the Product's weight loss claims.

50.     The findings from the *Norris* study were also problematic for several reasons.

51.     First, the statistical analysis was improper. The *Norris* study tested seventeen variables for statistical significance but failed to correct for multiple testing. Had a "Bonferroni" correction (REF) been used, the significance level would have been less than 0.039, which indicates that the findings would not be statistically significant.

52.     More than 36% of the subjects dropped out of the study before its completions, and the Norris study does not make clear whether the authors conducted an intent-to-treat analysis to account for potential bias that can result from such a high dropout rate.

---

[3] The "trunk" region of the body includes the chest, back, shoulders, and abdomen. The "trunk" also includes internal organs like the heart, lungs, stomach, liver, gallbladder, pancreas, spleen, kidneys and intestines.

-10-

CLASS ACTION COMPLAINT

53.    The *Norris* study also failed to use a "no-treatment" control group, so the *Norris* study only estimated the effects of HLA relative to the effects of conjugated linoleic acid (CLA). In other words, the results of the *Norris* study did not distinguish whether safflower oil reduces truncal fat or whether safflower oil causes less of an increase in truncal fat than CLA does.

**C. The Labeling of the Product Violates California and Federal Statutes and Regulations**

     *i.    Any Violation of Federal Food Labeling Statutes or Regulations is a Violation of California Law*

54.    Pursuant to the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code§§ 109875 *et. seq.* (the "Sherman Law"), California has adopted the federal food and dietary supplement labeling requirements as its own. *See id.* § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(q) (21 U.S.C. Sec. 343(q)) of the federal act and the regulation adopted pursuant thereto."); *id.* § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto.").

55.    For the purposes of labeling, "a dietary supplement shall be deemed to be a food." *See* 21 U.S.C. § 321(ff).

56.    The Federal Food, Drug, and Cosmetic Act expressly authorizes state regulations, such as the Sherman Law, that are "identical to the requirement[s]" of the FDCA and federal regulations. *See* 21 U.S.C. § 343-1.

57.    Because the Sherman Law's requirements are identical to the requirements of the Federal Food, Drug, and Cosmetic Act and FDA regulations, the Sherman law is explicitly authorized by the FDCA.

CLASS ACTION COMPLAINT

1

2

### ii.    The Product's False and Misleading Labeling Claims Render it Misbranded Under California and Federal Law

3      58.    Defendant's deceptive statements described herein violate Cal. Health

4  & Safety Code §§ 110390 and 110660, and 21 U.S.C. § 343(a), which deem a food

5  or dietary supplement misbranded if its labeling is "false or misleading in any

6  particular."

7      59.    Further, Defendant's labeling of the Product is misleading, and thus

8  misbranded, because "it fails to reveal facts that are material in light of other

9  representations." 21 C.F.R. §1.21.

10     60.    For example, in light of the Product's weight-loss claims, the labeling

11  fails to reveal the fact that numerous randomized, controlled human trials

12  demonstrate that HLA is not effective at achieving weight loss.

13     61.    Defendant's labeling also fails to reveal that the safflower oil group in

14  the *Norris* study, which Defendant relies upon in making its belly-fat reduction

15  claims, did not experience any change in BMI or total fat tissue. This suggests that

16  consuming safflower oil caused belly fat to be deposited in other areas of the body.

17     62.    The Product is further misbranded because its labeling and packaging

18  bears structure function claims even though the Product does not meet the

19  requirements to make such claims.

20     63.    Specifically, the statements "helps reduce belly fat" and "achieve

21  weight loss" claims are structure function claims.

22     64.    These claims violate 21 U.S.C. 343(r)(6) because the weight of

23  scientific evidence does not support these claims as being "truthful and not

24  misleading" as required. *See* 21 U.S.C. 343(r)(6). To the contrary, scientific

25  evidence, as alleged herein, affirmatively demonstrates that the Product's

26  purportedly "active" ingredient, safflower oil, does not provide such dietary benefits.

27

28

**D. Plaintiff's Purchase, Reliance, and Injury**

65.    Plaintiff Paula Maietta purchased the Product about once every three months starting in early 2016 through December 2018 in reliance on the Product's misleading dietary claims.

66.    Plaintiff's last purchase took place at a GNC store located at 78-670 Hwy 111 La Quinta, CA 92253 where she purchased a 16 fl. oz. container of the Product in its "key lime cream fusion" flavor. The cost was approximately $30.

67.    When deciding to purchase the Product, Plaintiff read and relied on the claims that the Product "helps reduce belly fat" and that Plaintiff would "achieve weight loss," which appear directly on the Product's label and packaging.

68.    Based on these representations, Plaintiff believed the Product was an effective dietary aid that would provide weight-loss and belly fat-reduction benefits.

69.    When purchasing the Product, Plaintiff sought a product that had the qualities described on the Product's label, namely, an effective supplement that aids in weight loss.

70.    After using the Product, Plaintiff did not experience the benefits promised by the Product's label.

71.    The representations on the Product's label were and are false and misleading, and had the capacity, tendency, and likelihood to confuse or confound Plaintiff and other consumers acting reasonably (including the putative Class) because, as described in detail herein, the Product cannot deliver the purported benefits and is no more effective than a placebo.

72.    Plaintiff acted reasonably in relying on the challenged claims that Defendant intentionally placed on the Product's label and packaging with the intent to induce average consumers into purchasing it.

73.    Instead of receiving a product that had actual beneficial weight-loss properties, the Product that Plaintiff and the Class received was one that does not and cannot deliver the touted benefits.

CLASS ACTION COMPLAINT

74.     Plaintiff, in the exercise of reasonable diligence, could not have discovered earlier Defendant's unlawful acts described herein because the violations were known to Defendant, and not to her, throughout the Class Period defined herein.

75.     The Product, which has the sole intended purpose as a dietary aid, is worthless since it does not provide any such benefits.

76.     The Product costs more than similar products without misleading labeling, and would have cost less absent the false and misleading statements.

77.     Plaintiff paid more for the Product and would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading labeling statements complained of herein.

78.     Plaintiff would not have purchased the Product if she knew it was misbranded pursuant to FDA regulations and could not be legally sold or held and thus is legally worthless.

79.      Plaintiff will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product again although she would like to.

80.     Plaintiff lost money as a result of Defendant's deceptive claims and practices in that she did not receive what she paid for when purchasing the Product.

81.     Plaintiff detrimentally altered her position and suffered damages in an amount equal to the amount she paid for the Product.

82.     The senior officers and directors of Defendant allowed the Product to be sold with the full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## V.     CLASS ACTION ALLEGATIONS

83.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks certification of the following Classes (or alternative Classes or Subclasses), for the time period from when the Product first entered into the stream of commerce until the present ("Class Period"), as defined as follows:

CLASS ACTION COMPLAINT

84.     The Nationwide Class is defined as follows:

All U.S. citizens who purchased the Product in their respective
state of citizenship for personal and household use and not for
resale during the Class Period.

85.     The California sub-class is defined as follows:

All California citizens who purchased the Product in California
for personal and household use and not for resale during the
Class Period.

86.     The Classes and Subclasses described in this complaint will jointly be referred to as the "Class" or the "Classes" unless otherwise stated, and the proposed members of the Classes and Subclasses will jointly be referred to as "Class Members."

87.     Plaintiff reserves her right to amend or modify the Class definitions with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

88.     Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

89.     The members in the proposed Classes are so numerous that individual joinder of all members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiff believes the total number of Class members is at least in the hundreds and members of the Classes are numerous.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of

-15-

the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

90.    Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief and damages as to the Product appropriate with respect to the Classes as a whole.  In particular, Defendant has failed to disclose the true nature of the Product being marketed as described herein.

91.    There is a well-defined community of interest in the questions of law and fact involved, affecting the Plaintiff and the Classes and these common questions of fact and law include, but are not limited to, the following:

   a.  Whether Defendant breached any express warranties made to Plaintiff and the Class;

   b.  Whether Defendant breached any implied warranties made to Plaintiff and the Class;

   c.  Whether Defendant engaged, and continues to engage, in unfair or deceptive acts and practices in connection with the marketing, advertising, and sales of the Product;

   d.  Whether Defendant violated other consumer protection statutes, false advertising statutes, or state deceptive business practices statutes;

   e.  Whether Defendant's conduct violates public policy; whether Defendant's conduct violates state and federal food statutes or regulations; whether the Product is misbranded;

   f.  The proper amount of restitution, damages, and punitive damages;

   g.  The proper injunctive relief, including a corrective advertising campaign; and

   h.  The proper amount of attorneys' fees.

92.    These common questions of law and fact predominate over questions

-16-

that affect only individual Class Members.

93.     Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Product, and suffered economic injury because the Product was and still is misrepresented. Absent Defendant's business practice of deceptively and unlawfully labeling the Product, Plaintiff and Class Members would not have purchased the Product.

94.     Plaintiff will fairly and adequately represent and protect the interests of the Classes, has no interests incompatible with the interests of the Classes, and has retained counsel with substantial experience in handling complex class action litigation in general and scientific claims specifically, including for dietary supplements.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.

95.     Plaintiff and the members of the Classes suffered, and will continue to suffer harm as a result of the Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Classes is impracticable.  Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.  Furthermore, for many,

CLASS ACTION COMPLAINT

if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

96.     Adjudication of individual Class members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

97.     Defendant has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

98.     As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT,(Cal. Civ. Code § 1750, *et seq.*)

99.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows.

100.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

101.   Plaintiff and the Class Members are consumers who purchased the Product for personal, family or household purposes. Plaintiff and the Class Members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

102.   The Product that Plaintiff and other Class Members purchased from Defendant is amongst the "goods" within the meaning of Cal. Civ. Code § 1761(a).

103.   Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

104.   Defendant's false and misleading labeling and other policies, acts, and

-18-

practices were designed to, and did, induce the purchase and use of the Product for personal, family, or household purposes by Plaintiffs and Class Members, and violated and continue to violate the following sections of the CLRA:

        a.  § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

        b.  § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

        c.  § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

        d.  § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

105.  Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers.

106.  Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

107.  Plaintiff and the Class relied upon the claims Defendant made for the Product in making their purchases of the Product.  In addition, given the materiality of Defendant's misrepresentations, absent Class Members are entitled to a presumption of reliance.

108.  On or about July 30, 2019, prior to filing this action, Plaintiff sent a CLRA notice letter to Defendant which complies with California Civil Code 1782(a). Plaintiff sent Defendant, on behalf of herself and the proposed Classes, a letter via Certified Mail, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.

109.  Wherefore, Plaintiff seeks injunctive relief, restitution, money damages, and punitive damages for these violations of the CLRA.

-19-

CLASS ACTION COMPLAINT

## SECOND CAUSE OF ACTION

### VIOLATION OF THE UNFAIR COMPETITION LAW

### (Cal. Bus. & Prof. Code § 17200 *et seq*.)

110.   Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows.

111.   California's Unfair Competition Law, Business and Professions Code §17200 (the "UCL") prohibits any "unfair, deceptive, untrue or misleading advertising."  For the reasons discussed above, Defendant has engaged in unfair, deceptive, untrue and misleading advertising, and continues to engage in such business conduct, in violation of the UCL.

112.   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

### "Unlawful" Prong

113.   The acts alleged herein are ''unlawful" under the UCL in that they violate at least the following laws:

   a.   By knowingly and intentionally concealing from Plaintiff and the other Class members that the Product cannot provide the advertised weight-loss benefits while obtaining money from Plaintiff and the Classes;

   b.   By misrepresenting the nature of the Product and the Product's effectiveness at providing the weight-loss benefits;

   c.   By engaging in the conduct giving rise to the claims asserted in this complaint;

   d.   By violating California Civil Code §§ 1709-1711 by making affirmative misrepresentations about the Product;

   e.   By violating California Civil Code §§ 1709-1711 by suppressing

-20-

material information about the Product;

    f.  By violating the California Commercial Code for breaches of express and implied warranties.

    g.  By violating Cal. Bus. & Prof. Code§ 12606.2 and 21 C.F.R. § 100.100;

    h.  By violating the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

    i.  By violating the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

    j.  By violating the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; and

    k.  By violating the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq.*

114.  Such conduct is ongoing and continues to this date.

115.  Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.

## **"Unfair" Prong**

116.  Defendant's acts, omissions, misrepresentations, practices and nondisclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  In the alternative, Defendant's business conduct as described herein violates relevant laws designed to protect consumers and business from unfair competition in the marketplace.  Such conduct is ongoing and continues to date.

117.  Defendant's conduct with respect to the labeling, advertising, and sale of the Product was and is also unfair because it violates public policy as declared by

specific constitutional, statutory or regulatory provisions, including but not limited to the Consumers Legal Remedies Act, the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

118.   Defendant's conduct with respect to the labeling, advertising, and sale of the Product was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

119.   Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Product to unwary consumers.

120.   Plaintiff and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Product's packaging. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

121.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

### **"Fraudulent" Prong**

122.   A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

123.   As set forth herein, Defendant's claims relating to the Product are likely to mislead reasonable consumers to believe the Product can provide weight-loss benefits, when it cannot.

124.   Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other Class members.  Plaintiff has suffered injury in fact as a result of Defendant's unfair conduct.  Defendant has thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiff and the Class to injunctive relief against Defendant, as set forth in the Prayer for Relief.

125.   Pursuant to Business and Professions Code §17203, Plaintiff and the Class seek an order requiring Defendant to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendant to engage in a corrective advertising campaign.   The conduct of Defendant as set forth above demonstrates the necessity for granting injunctive relief restraining such and similar acts of unfair competition pursuant to California Business and Professions Code.

126.   Unless enjoined and restrained by order of the court, Defendant will retain the ability to, and may engage in, said acts of unfair competition, and misleading "advertising."   As a result, Plaintiff and the Class are entitled to injunctive and monetary relief in the form of restitution under Cal. Bus. & Prof. Code § 17203.

127.   Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Products the Class Members purchased, which was unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW
### (Cal. Bus. & Prof. Code § 17500, *et seq*.)

128.   Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows.

129.   The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement ''which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

130.   It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which

-23-

CLASS ACTION COMPLAINT

by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

131.   As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the Product misled consumers acting reasonably as to the effectiveness and weight-loss properties of the Product.

132.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased the Product in reliance on Defendant's false and misleading labeling claims that the Product, among other things, helps reduce belly fat and achieve weight loss.

133.   Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Product in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

134.   Defendant profited from its sale of the falsely and deceptively advertised Product to unwary consumers.

135.   As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

136.   Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and the Class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## **FOURTH CAUSE OF ACTION**
### **Breach of Express Warranties,**
### **Cal. Com. Code § 2313(1)**

137.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

138.    Through the Product's label and advertising, Defendant made affirmations of fact or promises, or description of goods, described above, which were "part of the basis of the bargain," in that Plaintiff and the Class purchased the Product in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

139.    The foregoing representations were material and were a substantial factor in causing the harm suffered by Plaintiff and the Class because they concerned alleged efficacy of the Product regarding the ability to reduce belly fat and aid in weight loss.

140.    These representations had an influence on consumers' decisions in purchasing the Product.

141.    Defendant made the above representations to induce Plaintiff and the members of Class to purchase the Product. Plaintiff and the Class members relied on the representations when purchasing Defendant's product.

142.    Defendant breached the express warranties by selling a Product that does not and cannot provide the promised benefits.

143.    That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and Class members paid for the Product.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranties,

### Cal. Com. Code § 2314

144.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

145.    Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Product, made representations to Plaintiff and the Class that, among other things, the Product would help reduce belly fat and achieve weight loss.

146.    Plaintiff and the Class bought the Product manufactured, advertised, and sold by Defendant, as described herein.

-25-

CLASS ACTION COMPLAINT

147.  Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

148.  However, Defendant breached that implied warranty in that the Product does not help reduce belly fat or achieve weight loss.

149.  As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that it did not conform to promises and affirmations made on the container or label of the goods nor is it fit for its ordinary purpose, helping reduce belly fat and achieve weight loss.

150.  Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Product's purchase price.

## VI.    PRAYER FOR RELIEF

151.  WHEREFORE, Plaintiff prays for relief and judgment against Defendant as to each and every cause of action, including:

a.  An order certifying this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(1), 23(b)(2), and/or 23(b)(3);

b.  An order maintaining this action as a class action and/or an order maintaining a particular issue class action pursuant to Federal Rule of Civil Procedure 23(c)(4);

c.  An order requiring Defendant to bear the costs of class notice;

d.  An order appointing Plaintiff Paula Maietta as the class representatives and the Law Offices of Ronald A. Marron as Class Counsel;

e.  An Order compelling Defendant to conduct a corrective advertising campaign;

f.  An Order compelling Defendant to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending

Products;

g.  An Order awarding disgorgement of Defendant's profits that were obtained from its ill-gotten gains in connection with its sales of the Product to Plaintiff and the class members;

h.  An Order awarding restitution in the amount of the purchase price paid by the class members for the Product;

i.  An award for punitive damages;

j.  An award awarding attorneys' fees and costs; and

k.  An Order providing for all other such further relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable.


DATED: April 3, 2020                         Respectfully Submitted,

                                             */s/ Ronald A. Marron*
                                             Ronald A. Marron

                                             **LAW OFFICES OF RONALD A. MARRON**
                                             Ronald A. Marron
                                             *ron@consumersadvocates.com*
                                             Michael T. Houchin
                                             *mike@consumersadvocates.com*
                                             651 Arroyo Drive
                                             San Diego, CA 92103
                                             Telephone: (619) 696-9006
                                             Fax: (619) 564-6665
                                             ***Attorneys for Plaintiff and the Proposed Classes***

CLASS ACTION COMPLAINT